NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1381

RODNEY J. HENRY, JR., ET UX.

VERSUS

PNK (LAKE CHARLES), LLC

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-3559
HONORABLE WILFORD D. CARTER, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

AFFIRMED.

Thomas Joseph Solari
Woodley, Williams, Boudreau
P. O. Box 3731
Lake Charles, LA 70602-3731
(337) 433-6328
COUNSEL FOR DEFENDANT APPELLANT:
    PNK (Lake Charles), LLC

**Blaine Andrew Doucet**
**Attorney at Law**
**4216 Lake Street**
**Lake Charles, LA 70605**
**(337) 433-0100**
**COUNSEL FOR DEFENDANT APPELLANT:**
    **PNK (Lake Charles), LLC**

**Barry Alwin Roach**
**Larry A. Roach, Inc.**
**2917 Ryan St.**
**Lake Charles, LA 70601**
**(337) 433-8504**
**COUNSEL FOR PLAINTIFFS APPELLEES:**
    **Rodney J. Henry, Jr.**
    **Sandra Henry**

**SAUNDERS, J.**

This matter arises from a slip and fall at a casino buffet restaurant. Plaintiff sued for damages, receiving awards for physical pain and suffering, medical expenses, lost wages, and loss of consortium. The trial court found plaintiff's comparative fault to be 20%, the award reduced accordingly. Defendant casino appeals the judgment of the trial court, asserting error of fact as to the size of the wet area on which plaintiff purports to have fallen. Plaintiff also appeals, asserting error of fact as to alcohol impairment contributing to his fall. For the following reasons, we affirm the judgment of the trial court.

**FACTS AND PROCEDURAL HISTORY**

Plaintiffs, Rodney J. Henry (hereinafter "Mr. Henry") and his wife Sandra (hereinafter "Mrs. Henry"), brought suit against PNK (Lake Charles), L.L.C., d/b/a L'Auberge du Lac Hotel and Casino (hereinafter "L'Auberge") for injuries sustained while in the casino's buffet restaurant on June 23, 2006. On the night of the accident, the casino's sous chef, Jared Rising (hereinafter "Mr. Rising") noticed a slick spot on the floor. Having begun his employment in January of 2006, Mr. Rising's position as sous chef includes the duties of kitchen manager or kitchen supervisor. Part of these duties encompassed walking the floors of the dining area, handling problems as they arose. The slick spot, which turned out to be liquid butter, was located near the seafood section of the buffet area.

Next, Mr. Rising placed a chair on top of the butter spill, which he estimated to be approximately one foot in size. At various locations in the casino, L'Auberge placed "cleaning stations," where a mop, bucket of water, and "wet floor" sign are stowed for use in an accident. After placing the chair on top of the butter spill, Mr. Rising went to a storage area and retrieved a mop, bucket, and "wet floor" sign.

He then moved the chair, mopped up the spill, and placed the sign on top of the area he cleaned.

In the meantime, Mr. and Mrs. Henry entertained themselves at the casino. That day, they traveled from Lafayette, Louisiana to Lake Charles to visit Mr. Henry's mother in a nursing home. After the visit, the couple went to L'Auberge, where they gambled before proceeding to eat dinner. While gambling, Mr. Henry consumed two to three beers. After being seated at a table at the casino's restaurant, Mr. and Mrs. Henry waited in line at the buffet, got their meals, and returned to their table. Subsequently, Mr. Henry saw that crabs were available on a small salad bar buffet. He went to the buffet, served himself crabs, turned around, took a few steps, and fell down. Mr. Rising was alerted of the fall on his way back to return the bucket and mop to the cleaning station.

L'Auberge Security Officer Jeffrey Hillman (hereinafter "Mr. Hillman") filled out the incident report. According to the report, Mr. Hillman was notified of the accident at around 11:00 p.m. When Mr. Hillman spoke to Mr. Henry, Mr. Henry told him that he was near the salad bar when he slipped on the wet floor. Mr. Hillman then asked Mr. Henry whether he had seen a "wet floor" sign placed at the location of his slip and fall. Mr. Henry responded that he did see a sign, although he later denied making this statement. Mr. Henry was eventually diagnosed with a cracked patella and a tear in the meniscus.

The trial court issued a judgment awarding damages to Mr. Henry to the following effect: $20,000.00 for physical pain and suffering, $3,972.30 for medical expenses, and $4,505.00 for loss of earnings, totaling $28,477.30. The court also awarded Mrs. Henry $3,500.00 in loss of consortium damages. The court allocated 80% fault to L'Auberge and 20% fault to Mr. Henry, for the impairment his alcohol consumption caused. L'Auberge now appeals the trial

court's finding of liability. Mr. Henry answered the appeal with his own assignment of error, contesting the allocation of fault assigned to him by the trial court. For the reasons discussed herein, we affirm.

## ASSIGNMENTS OF ERROR

### Appellant's Assignment of Error

1. The Trial Court committed manifest error by assuming facts not in evidence when it found that the range of mopping performed by L'Auberge employee Jared Rising was an area of five to ten feet.

### Appellees' Assignment of Error

1. The Trial Court committed manifest error in holding that Mr. Henry was 20% at fault for contributory negligence when it found that Mr. Henry drank two or three beers and that might have contributed to the accident, when there was nothing in evidence that established that Mr. Henry was impaired, or that such impairment contributed in any way to Mr. Henry's fall.

## LAW AND ANALYSIS

Since the appellant and appellee allege error as to findings of fact, we must apply the manifest error standard:

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
>
> 2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Stobart v. State through Dept. of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993).

The liability of a merchant for an injury which a person sustains on the merchant's premises is governed by the Louisiana Merchant Liability Act, which states, in pertinent part:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in

3

a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La.R.S. 9:2800.6.

This court has applied the Louisiana Merchant Liability Act to accidents occurring at casinos. *See Neal v. Players Lake Charles, L.L.C.*, 01-0244 (La.App. 3 Cir. 6/6/01), 787 So.2d 1213; *Patin v. Evangeline Downs of Louisiana, Inc.*, 08-988 (La.App. 3 Cir. 2/4/09), 3 So.3d 638.

**Appellant's Assignment of Error**

L'Auberge asserts that the trial court committed manifest error by assuming facts not in evidence when it found that the range of mopping performed by L'Auberge employee Jared Rising was an area of five to ten feet. We find no merit in this contention.

The trial court orally explained its reasons for judgment from the bench:

[Mr. Rising] said the floor was mopped. He was going to bring the mop back and before he got to the closet to bring the mop back, someone informed him somebody slip[ped] and fell. That is a pretty quick type [sic] situation… With that testimony and the testimony of the plaintiffs that just testified, it appears that some food fell on the floor, the casino staff was alerted, they attempted to clean it up which they did clean it up, they put a sign which is all proper and good, but

apparently the area was more than just a foot or two. It seems the range of mopping was done within five to ten feet, from the witnesses['] testimony, and the sign was placed in a direction where all the patrons could not see it. It was one sign. From where the plaintiffs were sitting, they did not see the sign.

The trial judge goes on to state that the plaintiffs established that the defendant was liable under La.R.S. 9:2800.6: the defendant "failed to use reasonable care to keep the area free of hazardous condition despite prior knowledge of the defective condition," and "in allowing a dangerous condition to exist in the buffet area of the hotel and casino thereby creating an unreasonable and foreseeable risk of hazard and injury to the plaintiff."

At issue here is whether there is evidentiary support in the record that would support the trial court's finding that the range of mopping was five to ten feet. Testimony by two witnesses offer disparate approximations of the size of the wet spot on the floor. Mr. Rising on direct examination stated that he mopped an area of two to three feet. On cross examination, he testified that the area was three to four feet. On the other hand, Mrs. Henry testified that she noticed a fold out sign ten to twelve feet from the spot where Henry had fallen, although she did not witness the actual mopping itself. These estimations range from two feet to twelve feet. The trial court's finding of five to ten feet, then, is a reasonable estimation based on each party's claim. We reject L'Auberge's argument that the trial court took notice of facts not in evidence. Therefore, we find that the trial court did not commit manifest error and affirm the underlying judgment finding L'Auberge liable.

**Appellees' Assignment of Error**

Mr. and Mrs. Henry contend that the Trial Court committed manifest error in holding that Mr. Henry was 20% at fault when it found that Mr. Henry drank two or three beers and that alcohol might have contributed to the accident, when there

5

was nothing in evidence that established that Mr. Henry was impaired; or that such impairment contributed in any way to Mr. Henry's fall. Mr. and Mrs. Henry maintain that the trial court took notice of facts not in evidence in finding fault on Mr. Henry's part. We reject this argument and affirm the judgment of the trial court.

Louisiana Civil Code Article 2323 governs when a court should allocate fault in a suit for damages:

> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
>
> B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

La.Civ. Code art. 2323.

The allocation of comparative fault is a factual determination and is subject to the manifest error or clearly wrong standard of review. *Watson v. State Farm Fire and Casualty Insurance Company*, 469 So.2d 967 (La.1985). Here, the trial court in its oral reasons for judgment stated:

> [I] find that Mr. Henry was drinking and that might have contributed. So, out of an abundance of fairness, I am going to [assign] a 20% contributory negligence. You are at the casino. You are drinking beer. You are probably not as alert as you should be[,] so I am going to make a 20% [allocation].

The issue, as in the previous assignment of error, is whether there is evidentiary support in the record that would make the trial court's finding reasonable. Mr.

6

Henry estimated that he had two or three beers. The accident occurred around 11:00 p.m., after three hours of gambling and drinking, and before Mr. Henry was able to eat. The record also shows that a warning sign was placed in the general vicinity to warn patrons of the wet area. These facts in the record support a finding that Mr. Henry was 20% at fault, insofar as his alcohol consumption impaired him and contributed to his fall, and/or he failed to see and/or heed the warning sign. The trial court was reasonable in making this finding in light of all the evidence. It appears, then, that the trial court was not clearly wrong. We affirm the judgment of the trial court.

**CONCLUSION**

The trial court did not commit manifest error in finding that the wet area was five to ten feet in size, nor did the trial court commit manifest error in finding that Mr. Henry's alcohol consumption impaired him and contributed to the fall. We affirm the judgment of the trial court. All costs are assessed to the appellant, PNK, (Lake Charles), L.L.C. d/b/a L'Auberge du Lac Hotel and Casino.

**AFFIRMED.**