JjWILLIAMS, J.
In this slip and fall case, the plaintiff, Zeola Dubriel, appeals from a trial court judgment in favor of the defendant, Horseshoe Entertainment, dismissing plaintiffs *460 claims, at her costs. For the following reasons, we affirm.
FACTS
On December 12, 1996, Dubriel was dining at the Captain’s Table, a restaurant in the Horseshoe Casino, owned by Horseshoe Entertainment (“Horseshoe”), with her daughter, Taraleatha Burnett, and Burnett’s three-year-old son. During the meal, Burnett felt ill. An employee of the restaurant escorted her into a small room behind the checkout area. Burnett’s son ran after her and Dubriel chased the child from the restaurant into the open area of the establishment. Dubriel slipped on the tile floor and fell. Dubriel was wearing boots with taps on the soles. She alleges that she slipped on a foreign substance which caused her fall. She is unable to describe the substance and she admits that she did not see any type of substance. She simply insists that since she fell, a foreign substance must have been there.
During the trial, the following colloquy took place:
(Questioning by plaintiffs counsel):
Q: All right, when you got near the cashier’s stand, tell me what happened.
A: When I got near the cashier’s stand and I slipped on some type of foreign object and I fell.
Now whether the object on that floor was spit, snot, water or whatever, I do know for a fact that I fell.
Q: Now, can you give the court some idea of what you may have fallen on?
UA: Oh, all I can say it was some foreign object. I don’t know object. I don’t know exactly what it was or what it could have been, whether it was salava (sic), a drop of water or whatever.
Dubriel testified that she landed on her right knee when she fell and suffered pain and swelling as a result. However, the physicians’ deposition testimony, the emergency medical technician’s statement, and the photograph of plaintiffs knee at the time of the accident, all reflect that plaintiffs left knee was allegedly injured as a result of this fall. Dubriel was adamant at trial that she fell on her right knee and that all of the medical records were incorrect.
(Questioning by counsel for defendant):
Q: Now, Ms. Dubriel, did you fall on your right knee or your left knee when you fell at the Horseshoe?
A: On my right knee.
Q: Did you every (sic) tell your doctors, Dr. Sarpy or Dr. Simonton that you had fell on your left knee?
A: Not that I recall.
Q: Because you didn’t injury (sic) your left knee in this fall, did you?
A: That’s correct, it was the right knee.
A photograph of Dubriel’s knees, as they looked shortly after the accident, was included in the evidence submitted at the trial. The photograph appears to show that it was the left knee that was injured, since the right leg was straight and the left leg was bent. The photograph does not clearly indicate any swelling of the left knee. The surveillance video submitted shows that Dubriel was limping as she left the casino and her ^daughter assisted her several times. At one point, the daughter was supporting Dubriel on her right side, but she then moved to Dubriel’s left side to continue assisting her.
An employee of Horseshoe, Audrey Jackson, was standing ten to fifteen feet *461 away from where Dubriel fell and immediately went to her assistance. During her deposition, Jackson testified that she saw no debris or moisture on the floor around Dubriel. Jackson called the EMT, who arrived within minutes. Jackson accompanied Dubriel to the EMT office where the EMT photographed Dubriel’s knee which appeared swollen and also photographed the boots Dubriel was wearing at the time of the fall. Jackson stated she prepared her report within minutes of the examination of Dubriel and that the events were fresh in her mind as she wrote the report.
The EMT who assisted Dubriel, Janetta Defatta, testified that she examined Du-briel and photographed the area where Dubriel fell. She then took Dubriel to the EMT office in a wheelchair and she immediately called surveillance to focus the camera on the scene. She also looked around the floor and did not see anything which could have contributed to the fall.
Although Burnett testified at trial, she was unable to say what caused the fall, since she was not with Dubriel when she slipped. She testified that Dubriel appeared to be in pain and that both of her mother’s knees were swollen after the accident.
Following the «trial, which consisted of the testimony of Dubriel, Defatta and Burnett, the trial court held the case open for thirty days for further evidence. Thereafter, the case was taken under advisement.
|4The depositions of Drs. Simonton and Sarpy were introduced into evidence following the trial. Dr. Sarpy testified that he had treated Dubriel over the years for other accidents in which she was involved. According to Dr. Sarpy, Dubriel came to see him regarding this accident on December 16, 1996, complaining of injuries from a slip-and-fall that occurred on December 12, 1996. Dr. Sarpy stated that Dubriel “complained of injury to her left knee, her coccyx (tailbone), and her lower back.” He treated her until January 28, 1997; he then referred her to Dr. Simonton.
Dr. Simonton testified that he first saw Dubriel on February 18, 1997. Dubriel reported that she had injured her left knee and she never complained of any injury to her right knee. He diagnosed a contusion and traumatic chondromalacia (roughening of the cartilage) of the left knee as well as myoligamental strain and lumbar contusion. Based on the statements from Du-briel, Dr. Simonton determined that the chondromalacia resulted from trauma. He treated Dubriel until March 20, 1997, at which time he felt that she had fully recovered from her injuries. He did not give her any medical restrictions other than a recommendation that she minimize her knee-bending activities.
Following the parties’ submission of the depositions and briefs, the lower court determined that Dubriel had not met her burden of proof; namely,' she failed to produce credible evidence that a foreign substance caused her fall. The lower court then signed a judgment dismissing her demands against the defendant. Du-briel appeals.
J^DISCUSSION
Dubriel challenges the trial court’s finding that she had failed to meet her burden of proving that a foreign substance caused her fall. She argues that once she alleged a foreign substance was on the floor, the defendant was required to prove that the foreign substance did not cause her to fall.
LSA-R.S. 9:2800.6, the statute governing this action for damages, provides in pertinent part:
A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. *462 This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
The statute states exactly what a claimant must show in order to prove the liability of a merchant. In addition to all of the other elements of the cause of action through which the claimant asserts liability on the merchant, the claimant must also show that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
LSA-R.S. 9:2800.6(B).
According to the statute, “ ‘Monstruo- • tive notice’ means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.” LSA-R.S. 9:2800.6(0(1).
In the instant case, the trial court determined that Dubriel had not met the burden of proof required by LSA-R.S. 9:2800.6. In its written reasons, j fithe lower court stated that “no credible evidence was presented that a foreign substance caused the fall.” Our standard of review in this type of case is well settled:
The trial court’s factual findings are accorded great weight and may not be disturbed by a reviewing court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Rodgers v. Brookshire Grocery Company, 29,920 (La.App.2d Cir.10/29/97), 702 So.2d 11. To reverse a trial court’s factual determinations, a court of appeal must find from the record that there is no reasonable factual basis for the findings and that the findings are clearly wrong or manifestly erroneous. Thompson v. Coates, 29,333 (La.App.2d Cir.5/7/97), 694 So.2d 599, writs denied 97-1442 (La.9/26/97), 701 So.2d 985 and 97-1521(La.9/26/97), 701 So.2d 987. If the trier of fact’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell, supra.
Butler v. Doug’s IGA, 34,232 (La.App.2d Cir.12/6/00), 774 So.2d 1067, 1070.
Our review of the trial testimony, depositions and physical evidence submitted to the lower court reveals that the record supports the lower court’s determination that the plaintiff did not carry her burden of proof. The only “evidence” submitted purporting to prove the existence of this “foreign substance” was Dubriel’s self-serving testimony. In her deposition, Du-briel stated that she knew the substance on the floor was a liquid, “but it was a foreign matter because it looked clear.” She did not know the length of time the substance had been on the floor nor whether any employee of Horseshoe was aware of or had caused the presence of the substance. Further, her credibility is questionable because she steadfastly maintained that her right knee was injured, while the medical evidence showed that she received treatment for an injury to her left knee.
j 7Dubriel’s testimony was the only evidence submitted to the lower court in support of her contention that she stepped in a foreign substance which caused her to slip and fall. The record reveals a reasonable factual basis for the trial court’s findings. The conclusions drawn by the lower *463 court are well supported by the record and will not be disturbed on appeal.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to the appellant, Zeola Dubriel.
AFFIRMED.